IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

MARK T. MORRIS                                                                  PLAINTIFF

v.                   Civil No. 14-5096

SHERIFF KELLEY CRADDUCK;
NURSE DARLA WATSON; and the
SILOAM SPRINGS HOSPITAL                                     DEFENDANTS

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

This is a civil rights action brought by the Plaintiff under the provisions of 42 U.S.C. § 1983. He is proceeding *pro se* and *in forma pauperis*.

At the time he filed this complaint, the Plaintiff was incarcerated in the Benton County Detention Center (BCDC) located in Bentonville, Arkansas. He is now incarcerated in the Grimes Unit of the Arkansas Department of Correction located in Newport, Arkansas. His claims that are the subject of this case arose when he was in the BCDC.

The case is before me on two motions to dismiss filed by Separate Defendants Sheriff Cradduck and Nurse Watson (Docs. 13 & 22). Plaintiff has not responded to either motion.

**I. Background**

According to the allegations of the complaint, Plaintiff suffered an injury and was misdiagnosed by the Siloam Springs Hospital. Plaintiff states that once he was brought to the BCDC, the Sheriff and the medical staff denied him medical treatment. He states he almost died and suffered damage to his testicles.

Plaintiff states that eight months later, he had surgery. Plaintiff alleges he is still having issues but has not been seen by a doctor. Plaintiff states he has two specialists to "back-up [his]

situation." Plaintiff states that despite this, BCDC staff kept telling him that nothing was wrong. He also indicates he was denied "any and all pain meds." He contends this was inhumane.

In a supplement to the complaint (Doc. 21), Plaintiff states he was repeatedly lied to about appointments with Dr. Robert Zimmermann, the urologist who performed the Plaintiff's surgery on October 31, 2014. Plaintiff states he was told that Dr. Zimmermann was booked for months but that Plaintiff could be seen by the jail doctor, Dr. Lafferty.

## II. Applicable Standard

Rule 8(a) contains the general pleading rules and requires a complaint to present "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "In order to meet this standard, and survive a motion to dismiss under Rule 12(b)(6), 'a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.'" Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009)(quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

"The plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a 'sheer possibility.'" Braden, 588 F.3d at 594 (quoting Iqbal, 556 U.S. at 678). The standard does "not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation," or reasonable inference, that the "defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; see also Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004)(While pro se complaints are liberally construed, they must allege sufficient facts to support the claims.).

## III. Discussion

As noted above, Separate Defendants Cradduck and Watson have filed two motions to dismiss.

**(A). First Motion to Dismiss** (Doc. 13)

Defendants maintain the complaint is subject to dismissal for the following reasons: (1) it fails to state a claim against them in their official capacities; (2) no claim has been stated against Sheriff Cradduck in his individual capacity; (3) no claim has been stated against Nurse Watson in her individual capacity; and (4) they are entitled to qualified immunity.

**(1). Official Capacity Claims**

Official capacity claims are "functionally equivalent to a suit against the employing governmental entity." Veatch v. Bartels Lutheran Home, 627 F.3d 1254, 1257 (8th Cir. 2010). In other words, the official capacity claims are treated as claims against Benton County. See Murray v. Lene, 595 F.3d 868, 873 (8th Cir. 2010).

"[I]t is well established that a municipality cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." Atkinson v. City of Mountain View, Mo., 709 F.3d 1201, 1214 (8th Cir. 2013). To establish Benton County's liability under § 1983, "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." Moyle v. Anderson, 571 F.3d 814, 817 (8th Cir. 2009)(citation omitted). The applicable law has been summarized as follows:

> There are two basic circumstances under which municipal liability will attach: (1) where a particular municipal policy or custom itself violates federal law, or directs an employee to do so; and (2) where a facially lawful municipal policy or custom was adopted with "deliberate indifference" to its known or obvious consequences. *Seymour v. City of Des Moines*, 519 F.3d 790, 800 (8th Cir. 2008). There need not be a finding that a municipal employee is liable in his or her individual capacity before municipal liability can attach. *Speer v. City of Wynne*, 276 F.3d 980 (8th Cir. 2002); *Parrish v. Luckie*, 963 F.2d 201, 207 (8th Cir. 1992) ("A public entity or supervisory official may be held liable under § 1983 even though no government individuals were personally liable."). Where an official policy is itself unconstitutional or directs employees to take unconstitutional action, no evidence beyond a statement of the policy and its

exercise is necessary to establish § 1983 liability. *Szabla v. City of Brooklyn Park*, 486 F.3d 385, 389-90 (8th Cir. 2007).

Id. at 817-18.

The only allegations suggestive of an unconstitutional custom or policy are Plaintiff's allegations that he was required to see jail medical staff, and was charged for these visits, before he could see the urologist. Plaintiff alleges this policy or custom was utilized to generate income or "profit" as well as well as saving costs by delaying the provision of necessary medical treatment by a specialist.

Whether or not a referral should be made to a specialist is a diagnostic decision made by medical staff. See e.g., Pyles v. Fahim, 771 F.3d 403, 411 (7th Cir. 2014)("the choice of whether to refer a prisoner to a specialist involves the exercise of medical discretion, and so refusal to refer supports a claim of deliberate indifference only if that choice is blatantly inappropriate"); Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995)(Where Defendants lacked medical expertise, "they cannot be liable for the medical staff's diagnostic decision not to refer Camberos to a doctor to treat his shoulder injury"). However, if the decision of whether or not to send a prisoner to a specialist is based on a profit, or expense saving, motive rather than medical judgment, this could constitute an unconstitutional custom or policy. Plaintiff alleges that Defendants had a policy of delaying, or refusing, referrals to specialists to save costs. A plausible official capacity claim is stated.

### (2).  Individual Capacity Claim Against Sheriff Cradduck

A claim of deprivation of a constitutional right cannot be based on a *respondeat superior* theory of liability. See Monell v. Department of Social Services, 436 U.S. 654, 694

-4-

(1978). "[A] supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional activity." White v. Holmes, 21 F.3d 277, 280 (8th Cir. 1994); see also Whitson v. Stone County Jail, 602 F.3d 920, 928 (8th Cir. 2010) ("In a § 1983 case, an official is only liable for his own misconduct and is not accountable for the misdeeds of his agents under a theory such as respondeat superior or supervisor liability") (internal quotations omitted); Keeper v. King, 130 F.3d 1309, 1314 (8th Cir. 1997) ("general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability"). "Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability of the supervisory defendants, [Plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights." Clemmons v. Armontrout, 477 F.3d 962, 967 (8th Cir. 2007) (quoting Mayorga v. Missouri, 442 F.3d 1128, 1132 (8th Cir. 2006)).

The sole allegation Plaintiff makes regarding the Sheriff is that the Plaintiff "was denied medical treatment by [the] Sheriff, and medical staff." (Doc. 1 at pg. 5). The supplement to the complaint (Doc. 21) does not mention Sheriff Cradduck. Plaintiff does not allege that he had any personal contact with Sheriff Cradduck; nor has Plaintiff alleged that Sheriff Cradduck had any personal involvement in the decision of whether or not Plaintiff should have been referred to a specialist. The complaint contains no factual allegations suggesting that Sheriff Cradduck even knew the Plaintiff was in need of medical care.

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief

-5-

requires more than labels and conclusions. . . Factual allegations must be enough to raise a right to relief above the speculative label." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)(internal quotation marks and citations omitted). Here, Plaintiff has provided no factual support to suggest a plausible individual capacity claim exists. Sheriff Cradduck is entitled to dismissal of the individual capacity claim.

### (3). Individual Capacity Claim against Nurse Watson

Defendants assert that Nurse Watson is not mentioned by name in Plaintiff's statement of his claim. Even if the Court assumes Plaintiff was talking about Nurse Watson when he references the "medical staff," Defendants argue that the alleged provision of surgery, even if delayed by mis-diagnosis, has never been held to constitute deliberate indifference.

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." County of Sacramento v. Lewis, 523 U.S. 833, 851 (1998)(citation omitted). "Deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment as applied to the States by the Fourteenth Amendment." Hartsfield v. Colburn, 491 F.3d 394, 396 (8th Cir. 2007). In this circuit it is now settled law that deliberate indifference is the appropriate standard of culpability for all claims that detention center officials have denied inmates, whether in pretrial or convicted status, adequate medical care. See Butler v. Fletcher, 465 F.3d 340, 344 (8th Cir. 2006).

"In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). The deliberate indifference standard includes "both an objective and a

AO72A
(Rev. 8/82)

subjective component: 'The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000)(quoting Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997)).

"Deliberate indifference entails a level of culpability equal to the criminal law definition of recklessness, that is, a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Bender v. Regier, 385 F.3d 1133, 1137 (8th Cir. 2004)(internal quotation marks and citation omitted). Medical malpractice is not deliberate indifference. Estelle, 429 U.S. at 106. However, "[d]eliberate indifference may be found where medical care is so inappropriate as to evidence intentional maltreatment." Fourte v. Faulkner County, Ark., 746 F.3d 384, 387 (8th Cir. 2014)(internal quotation marks and citation omitted).

While detainees have the right to "reasonable medical care in the face of a known substantial risk of harm," Farmer v. Brennan, 511 U.S. 825, 847 (1994), the "Eighth Amendment does not guarantee all prisoners medical care commensurate with that enjoyed by civilian populations." Hines v. Anderson, 547 F.3d 915, 922 (8th Cir. 2008). It is well settled that a "prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." Nelson v. Shuffman, 603 F.3d 439, 449 (8th Cir. 2010) (internal quotation marks and citations omitted). An "inmate must clear a substantial evidentiary threshold to show the prison's medical staff deliberately disregarded the inmate's needs by administering inadequate treatment." Id. Despite this, issues of fact exist when there is a question of whether or not medical staff exercised independent

AO72A
(Rev. 8/82)

medical judgment and whether the decisions made by medical staff fell so far below the reasonable standard of care as to constitute deliberate indifference. See Smith v. Jenkins, 919 F.2d 90, 93 (8th Cir. 1990).

I believe a plausible claim has been stated. The Court assumes that Plaintiff was referring to Nurse Watson when he referenced the "medical staff." Plaintiff alleges he was denied medical care which "almost killed" him. As a result, Plaintiff states he suffered injury to his testicles that resulted in him having surgery eight months later. He states he was not seen by a doctor at the jail and that there were two specialists that will "back-up [his] situation." He further alleges that he was inhumanely denied any type of pain medication.

Defendants next argue that "[s]ince Plaintiff fails to make any allegations against Defendant Darla Watson, and certainly fails to allege an actionable claim or violation of any clearly established law, Darla Watson is entitled to qualified immunity and the dismissal of Plaintiff's Complaint." Doc. 14 at 6-7.

The Court "accepts as true the Plaintiff's factual allegations, viewing them most favorably to the plaintiff[]." Scott v. Baldwin, 720 F.3d 1034, 1036 (8th Cir. 2013)(citation omitted). Defendant Watson must show that she is "entitled to qualified immunity on the face of the complaint." Id. (internal quotation marks and citation omitted).

Qualified immunity "is an *immunity from suit* rather than merely a defense to liability." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (emphasis in original). It entitles an individual to not be subject to trial or the other burdens of litigation and "is effectively lost if a case is erroneously permitted to go to trial." Id. Accordingly, it is important that the question of qualified immunity be resolved as early as possible in the proceedings. O'Neil v. City of Iowa

City, 496 F.3d 915, 917 (8th Cir. 2007) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001); Schatz Family ex rel. Schatz v. Gierer, 346 F.3d 1157, 1160 (8th Cir. 2003)).

Analyzing a claim of qualified immunity requires a two-step inquiry. Jones v. McNeese, 675 F.3d 1158, 1161 (8th Cir. 2012). In one step, the deciding court determines whether the facts demonstrate a deprivation of a constitutional right. Id. (citing Parrish v. Ball, 594 F.3d 993, 1001 (8th Cir. 2010)). In the other, the court determines whether the implicated right was clearly established at the time of the deprivation. Id. (citing Parrish, 594 F.3d at 1001).

"Because qualified immunity is an affirmative defense, *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S. Ct. 1920, 1923, 64 L. Ed. 2d 572 (1980), it will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint." Weaver v. Clarke, 45 F.3d 1253, 1255 (8th Cir. 1995). Immunity is appropriate if the plaintiff does not allege a violation of a clearly established constitutional or statutory right. Latimore v. Widseth, 7 F.3d 709, 712 (8th Cir. 1993).

> The mere assertion of such a right, however, will not be adequate: "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Thus the defense still may be viable, even in the face of a clearly established (and violated) constitutional right, if the defendant can demonstrate "the 'objective legal reasonableness' of the action assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson*, 483 U.S. at 639 . . . .

Latimore, 7 F.3d at 712.

"It is well established that deliberate indifference to a prisoner's serious medical needs is cruel and unusual punishment in violation of the Eighth Amendment." Langford v. Norris, 614 F.3d 445m 459 (8th Cir. 2010)(internal quotation marks and citations omitted). I will

presume for purposes of this motion that Plaintiff's medical needs were objectively serious. He indicates that he required surgery and sustained permanent damage as a result of not receiving prompt medical care. He also alleges he was inhumanely not given any pain medication. It is clearly established that delays in the provision of treatment for painful medical conditions may constitute deliberate indifference. See Rodriguez v. Plymouth Ambulance Serv., 577 F.3d 816, 829 (7th Cir. 2009)(collecting cases). In this case, if all facts asserted in the complaint are taken as true, "the unlawfulness of failing to ensure that [Plaintiff] received adequate treatment would be apparent." Langford, 614 F.3d at 461. Defendants have not shown, based on the face of the complaint, that Nurse Watson is entitled to qualified immunity.

**(B). Second Motion to Dismiss** (Doc. 22)

Defendants filed this motion to dismiss (Doc. 22) because Plaintiff was allowed to file a supplement to his complaint (Doc. 21). They assert the same arguments raised in the initial motion to dismiss; in fact, they adopt and incorporate the first motion.

In the supplement, Plaintiff alleges Nurse Watson repeatedly lied to him about his "so-called appointments" with Dr. Zimmermann, the urologist who did his surgery. Doc. 21. Plaintiff states he was told Dr. Zimmermann did not want to see him at that time and was unavailable because he was booked for several months. Id. Plaintiff alleges he was told he could see the jail doctor, Dr. Lafferty. Plaintiff maintains this was done so that Defendants could charge him for visits to the jail doctor and nurse before he could see Dr. Zimmermann. Plaintiff further alleges that he was in pain all the time.

As discussed above, I believe plausible official policy claims are stated. However, I agree that no plausible individual capacity claims are stated against Sheriff Cradduck in the

-10-

supplement. For the reasons stated above, I do not agree that no actionable claim is asserted against Nurse Watson or that she is entitled to qualified immunity. The law is clearly established that a delay in medical treatment based on non-medical reasons may constitute deliberate indifference. See e.g., Blackmore v. Kalamazoo County, 390 F.3d 890, 899 (6th Cir. 2004); Farrow v. West, 320 F.3d 1235, 1246 (11th Cir. 2003); Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

### IV. Conclusion

For the reasons stated, I recommend that the motions to dismiss (Docs. 13 & 22) be granted in part and denied in part. Specifically, I recommend that all individual capacity claims against Sheriff Cradduck be dismissed. In all other respects, the motions should be denied.

**The Parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The Parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 13th day of April 2015.

/s/ *Erin L. Setser*
   HON. ERIN L. SETSER
   UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)